454 So.2d 701 (1984)
SEWER VIEWER, INC., Appellant,
v.
SHAWNEE SUNSET DEVELOPERS, INC., a Florida Corporation As General Partner, D/B/a Sunridge Venture Ltd., Appellee.
No. 83-1285.
District Court of Appeal of Florida, Second District.
August 10, 1984.
Richard W. Wood of Adams, DeVilbiss, Vorbeck & Wood, Bradenton, for appellant.
David K. Deitrich of Dye, Cleary, Scott & Deitrich, Bradenton, for appellee.
BOARDMAN, Judge.
Appellant, Sewer Viewer, Inc., contests the trial court's judgment limiting the corporation's recovery in a mechanic's lien foreclosure action to the amount remaining due to the general contractor. We agree that this limitation was improper and, therefore, reverse.
Pursuant to a written agreement with the general contractor,[1] appellant undertook to video tape, clean, and repair a sewer drainage system in a subdivision owned and developed by appellee, Shawnee Sunset Developers, Inc. No privity of contract existed between appellant and the owner. After completing its work, appellant submitted bills totaling $6,280.90 to the contractor for payment, which was not forthcoming.
Appellant timely recorded its claim of lien against appellee's property under section 713.04, Florida Statutes (1981), and brought the instant foreclosure action as a subcontractor providing labor and materials for subdivision improvements. Appellee answered and alleged that it had made no improper payments to the general contractor and that appellant had rejected its tender of the $3,880 balance remaining due the general contractor.
After a nonjury trial, the court below entered a final judgment which limited appellant's recovery to $3,880 and denied appellant's claim for attorney's fees and court costs.
Appellant argues that we should construe section 713.04, Florida Statutes (1981), to determine its relationship with the remainder of chapter 713, part I. Specifically, we are asked to decide whether the provisions of section 713.06(1), Florida Statutes (1981), which generally limit the total amount of all liens held by persons not in privity with the owner to the price *702 fixed in the direct contract, apply to lienors making subdivision improvements. We conclude that they do.
In so concluding, we consider that the purpose of section 713.04 is simply to provide less restrictive notice requirements for persons who, regardless of privity, are entitled to a lien for subdivision improvements, and to make provision for the attachment of such liens on abutting properties where the improvements are to lands dedicated to the public. We do not consider that the legislature intended to create a separate category of lien for subdivisions in regard to the manner, amount, and extent of a lien perfected under section 713.04.
Our supreme court in American Fire & Casualty Co. v. Davis Waste & Water Industries, Inc., 377 So.2d 164 (Fla. 1979), a decision which construed a prior version of section 713.04 as exempting lienors making subdivision improvements from the requirement of serving a notice to owner, adopted the reasoning of the Fourth District in American Fire & Casualty Co. v. Davis Waste & Water Industries, Inc., 358 So.2d 225 (Fla. 4th DCA 1978), that section 713.04 "establishes a class of liens separate from the others provided for in chapter 713, part I." 377 So.2d at 165.[2]Accord Mershon v. Buckles-Thompson, Inc., 383 So.2d 280 (Fla. 5th DCA 1980) (section 713.04 creates "subdivision exception" to notice to owner requirement); Baumgartner Construction Co. v. Harrell, 364 So.2d 802 (Fla. 1st DCA 1978) (reading section 713.04 in pari materia with section 713.06 mandates the conclusion that untimeliness of notice to owner served by lienor furnishing labor and materials for subdivision improvements did not bar recovery under section 713.04). The Fourth District also recently held in Pembroke Villas of Broward, Inc. v. Raymundo, 447 So.2d 324 (Fla. 4th DCA 1984), that the general contractor's failure to furnish the owner a contractor's affidavit pursuant to section 713.06(3)(d)(1), Florida Statutes (1981), did not bar the contractor's recovery on a lien arising under section 713.04. All of the above-cited cases, however, deal with the less restrictive procedural requirements of section 713.04, and not the "quality" or "quantity" of lien acquired. See Pembroke Villas at 325-327 (Walden, J., concurring specially) (legislature did not intend to create new class of lienors through enactment of section 713.04; statute merely attempts to ameliorate particular problems inherent in subdivision development).
A close examination of other sections of chapter 713, part I, supports our conclusion. Section 713.06(1) provides:
The total amount of all liens allowed under part I for furnishing labor, services, or material covered by any certain direct contract shall not exceed the amount of the contract price fixed by the direct contract except as provided in subsection (3).
Section 713.04 is obviously contained in part I of chapter 713. Further, there is certainly no indication that the legislature intended to exclude the provisions of section 713.23 from applying to liens acquired in regard to subdivisions. Section 713.23 again makes reference to part I. The payment bond authorized under that section is required to be "in at least the amount of the original contract price." Thus, it seems clear to us that section 713.04 was not meant to allow the cumulative total of liens thereunder to exceed the contract price where there is a contract price, except as provided in section 713.06(3).
However, even though we hold that the limitations of section 713.06(1) do apply to liens arising under section 713.04, a factual question requires our reversal of the trial court's judgment. Nothing in the record establishes that appellee and the general contractor ever agreed upon a specific contract price. Apparently, appellee merely paid the general contractor for invoices submitted from time to time as work on the job progressed. Consequently, we find no *703 support in the sparse record before us for the trial court's conclusion that only $3,880 of the original contract price remains unpaid.
While section 713.06(1) limits liens to a total not to exceed the contract price, section 713.01(3) defines "contract price" where no price is agreed upon, as meaning "the value of all labor, services, or materials covered by their contract... ." In simpler language, if there is no agreed total contract price between the general contractor and the owner, then there is no limit, except for actual value, to the amount of liens that are properly acquired pursuant to the general contract to improve the realty.
We therefore conclude that the trial court erred in not awarding appellant $6,280.90, the full amount of its claim of lien, and in denying appellant's claim for attorney's fees and court costs.
Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.
OTT and LEHAN, JJ., concur.
NOTES
[1] The general contractor is not a party to this appeal.
[2] While acknowledging the confusion inherent in the mechanic's lien statutes, our sister court concluded that each of sections 713.03 through 713.06 governs different classes of lienors; thus, the requirements of section 713.06(2), as to notice, should not be engrafted upon the other sections.