645 So.2d 490 (1994)
Morton L. GINSBERG and MLG Properties, Inc., Appellants,
v.
LENNAR FLORIDA HOLDINGS, INC. and MS Florida Corporation on behalf of Lennar Florida Partners I., A Limited Partnership, Appellees.
No. 94-363.
District Court of Appeal of Florida, Third District.
October 5, 1994.
Rehearing Denied December 21, 1994.
*491 Young, Berman & Karpf and Andrew S. Berman, North Miami Beach, for appellants.
Cadwalader, Wickersham & Taft and James W. Beasly, Jr. and Jacqueline S. Miller *492 and Michael C. Todd, Palm Beach, for appellees.
Before BARKDULL, HUBBART and BASKIN, JJ.
BARKDULL, Judge.
Appellant seeks review of a trial court order denying a motion to vacate a default judgment.
Appellant, Martin L. Ginsberg, is the owner and operator of, codefendant, MLG Properties, Inc., a property management firm. Mr. Ginsberg is also the general partner of two limited partnerships, Loch Lomond I Associates Limited Partnership and Community Acres Associates Limited Partnership. Each limited partnership owns an apartment complex located in Broward County, Florida. Both apartment complexes were managed by MLG Properties, Inc. In 1988 both Loch Lomond and Community Acres gave mortgages to Amerifirst Bank on their Broward County properties. Mr. Ginsberg, as general partner, signed these mortgages for each partnership respectively.
Appellees, Lennar Florida Holdings, Inc. and MS Florida Corporation are general partners of Lennar Florida Partners I Limited Partnership a real estate investment company. Lennar Florida Partners I Limited Partnership, is the mortgage holder on the Loch Lomond and Community Acres properties located in Broward County, Florida. Lennar purchased these mortgages from an agency of the Federal Government, the Resolution Trust Corporation [RTC], in July of 1992. The RTC had acquired these mortgages, in March of 1991, from the original mortgagee, Amerifirst Bank, after the RTC was appointed receiver of Amerifirst Bank by the Office of Thrift Supervision pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989.
In late 1991 both the Loch Lomond and Community Acres mortgages were in default, the RTC commenced foreclosure proceedings and a receiver was appointed for the properties. In November of 1992 Lennar obtained a foreclosure judgment and scheduled a foreclosure sale for January 1993. That sale was stayed when the Loch Lomond and Community Acres partnerships sought protection under the United States Bankruptcy Code, filing a Chapter 11 petition in the Southern District of New York.
In March of 1993 Lennar filed, in Dade County Circuit Court, a complaint sounding in tort against Martin L. Ginsberg and MLG Properties, Inc. On April 13, 1993 Ginsberg requested and received a ten day extension to answer Lennar's complaint. On April 27th Ginsberg had not answered and Lennar moved for a default judgment. On the 3rd of May Ginsberg moved to dismiss Lennar's complaint for failure to state a cause of action. Ginsberg's motion was granted in part on May 19th and he was ordered to file an answer within twenty days.
On May 27, 1993 Lennar filed an Amended Complaint.[1] Lennar attached to the amended complaint a copy of the Assignment of Mortgage from the RTC and the mortgage documents which control the Loch Lomond and Community Acres loans. Those documents consist of a Loan Agreement, a Promissory Note, a Mortgage Note and a Collateral Assignment of Rents, Leases, and Profits.
Lennar's Amended Complaint alleged generally that Lennar was the holder of the Loch Lomond and Community Acres mortgages; that the mortgages were in default; that the RTC had notified the mortgagor's that they were in default; that the loan documents gave Lennar a right to the rents from the partnership's apartment buildings upon default; that Ginsberg and MLG had wrongfully diverted the rents to Ginsberg's personal use; that said diversion was not within the proper scope of Ginsberg's duties as general partner of either of the limited partnerships; that Ginsberg had a personal stake in the wrongdoing; and, that Lennar had complied with all conditions precedent to bringing the action. Further, Lennar's complaint alleged five specific counts. Count I alleged Conversion against Mr. Ginsberg and MLG Properties, Inc., Count II alleged *493 Waste against MLG Properties, Inc., Count III alleged Civil Theft against Mr. Ginsberg and MLG Properties, Inc., Count IV alleged Violation of the Florida Civil Remedies for Criminal Practices Act [RICO] against Mr. Ginsberg and MLG Properties, Inc. and Count V alleged a Violation of Section 772.103(4), Florida Statutes against Mr. Ginsberg and MLG Properties, Inc.
On June 18, 1993 Lennar moved for default judgment citing Ginsberg's failure to answer the amended complaint. On June 21st Ginsberg moved to dismiss Lennar's amended complaint. On July 9th Ginsberg's counsel moved to withdraw from the case. On July 12th the trial court denied Ginsberg's motion to dismiss and ordered Ginsberg to file an answer by July 15th. On July 19th Lennar filed its third motion for default judgment. On July 22nd the court granted Ginsberg's counsel's motion to withdraw, ordered all pleading and papers to be served on Ginsberg in New York and granted Ginsberg ten days to obtain new counsel and file an answer to Lennar's amended complaint. On August 3rd Lennar filed its fourth motion for default judgment, again citing Ginsberg's failure to answer. Lennar served a copy of this motion on Ginsberg in New York. On August 16th the trial court continued a hearing, set for that day, on Lennar's motion for default. The trial court cited as grounds for the continuance a phone call from a New York attorney apparently attempting to make an appearance on behalf of Ginsberg. The trial court ordered the New York attorney to enter a written appearance and be prepared to respond in person to Lennar's motion on August 24th. At the August 24th hearing the trial court found that Ginsberg had failed to file an answer to the amended complaint and entered a default judgment against Ginsberg. Lennar then set the case for trial on damages and the case was called on December 22, 1993. On December 22nd Ginsberg appeared pro se and requested a sixty day continuance, arguing that he needed time to employ local counsel. The trial court granted that request and continued the case until February of 1994. Ginsberg hired counsel and on January 26th filed a motion to vacate the default judgment. On February 22nd the trial court held a hearing on Ginsberg's motion. Ginsberg argued that the trial court should vacate the default because there had been excusable neglect in his failure to answer the amended complaint and that Lennar's amended complaint failed to state a cause of action. The trial court denied Ginsberg's motion and this appeal followed.
Without discussion we reject Ginsberg's argument that the trial court erred in not vacating the default due to excusable neglect in answering Lennar's amended complaint. See and compare Fla.R.Civ.P. 1.540(b); Otero v. G.I.E. Ins. Co., 606 So.2d 443 (Fla. 2d DCA 1992), review denied, 614 So.2d 502 (Fla. 1993); World's Finest Inc. v. Carpenter, 564 So.2d 626 (Fla. 4th DCA 1990); Techvend Inc. v. Phoenix Network Inc., 564 So.2d 1145 (Fla. 3d DCA 1990); Fischer v. Barnett Banks, 511 So.2d 1087 (Fla. 3d DCA 1987); Bayview Tower Condominium v. Schweizer, 475 So.2d 982 (Fla. 3d DCA 1985); Lacore v. Giralda Bake Shop, 407 So.2d 275 (Fla. 3d DCA 1981); B.C. Builders Supply Co. v. Maldonado, 405 So.2d 1345 (Fla. 3d DCA 1981).
A default judgment will be set aside where the complaint upon which the default was granted fails, on its face, to set forth a viable cause of action. See Becerra v. Equity Imports, 551 So.2d 486 (Fla. 3d DCA 1989); Magnificent Twelve Inc. v. Walker, 522 So.2d 1031 (Fla. 3d DCA 1988); Sunshine Security & Detective Agency v. Wells Fargo, 496 So.2d 246 (Fla. 3d DCA 1986); Fernandez-Aguirre v. Gall, 484 So.2d 1286 (Fla. 3d DCA 1986).
As this court explained in Becerra:
A default admits liability as claimed in the pleading by the party seeking affirmative relief against the party in default. It operates as an admission of the truth of the well plead allegations of the pleading, except those concerning damages. It does not admit facts not plead, not properly plead, or conclusions of law. Fair inferences will be made from the pleading, but forced inferences will not. The party seeking affirmative relief may not be granted relief that is not supported by the pleading or by substantive law applicable *494 to the pleading. A party in default may rely on these limitations... .
Failure to state a cause of action, unlike formal or technical deficiencies, is a fatal pleading deficiency not curable by a default judgment. The reason why a pleading deficiency is not cured by a default judgment  formerly a decree pro confesso  is that in such cases the introduction of proof is not required, and even if the allegation were accepted as true, the plaintiff would not have made a case upon which relief could be granted.
Id., at 488.
Lennar attached several documents to its amended complaint as exhibits. When a party attaches exhibits to the complaint those exhibits become part of the pleading and the court will review those exhibits accordingly. See and compare Franz Tractor v. J.I. Case, 566 So.2d 524 (Fla. 2d DCA 1990); Health Application Systems v. Hartford Life Ins., 381 So.2d 294 (Fla. 1st DCA 1980); McClurkin v. Parrish Volvo, 317 So.2d 85 (Fla. 1st DCA 1975). We are not bound by Lennar's interpretation of the attached exhibits. The conclusions of the pleader, as to the meaning of the exhibits attached to the complaint, are not binding on the court. See N.C. Brandon v. County of Pinellas, 141 So.2d 278 (Fla. 1962). Exhibits attached to the complaint are controlling, where the allegations of the complaint are contradicted by the exhibits, the plain meaning of the exhibits will control. See and compare American Seafood v. Clawson, 598 So.2d 273 (Fla. 3d DCA), review dismissed, 606 So.2d 1164 (Fla. 1992); Franz; Affordable Homes v. Devil's Run, 408 So.2d 679 (Fla. 1st DCA 1982).
The loan documents, which are controlling in this case, reference to and incorporate each other to form a complete contractual agreement. A review of those documents establishes that Lennar and Mr. Ginsberg are bound by a relationship which is contractual in nature. The Loan Agreement, which was attached to the amended complaint, contains ten sections comprising several hundred paragraphs addressing among other things, the priority of liens; pending litigation; violation of and compliance with applicable laws; utilities; brokerage commissions; insurance; rights of inspection; books, records and annual statements; reporting to the lender; security agreements; default provisions; bankruptcy; transfers of security; foreclosure; remedies, including possession and operation in the event of default; indemnification; assignments of security; and, a non-recourse clause. The Promissory Note, which was attached to the amended complaint, contains three sections including paragraphs addressing among other things, interest rate provisions; payment provisions; payment terms; payment application; remedies upon default; a non-recourse clause; and, other general information dealing with the loan. The Mortgage, which was attached to the amended complaint, contains twenty five paragraphs addressing among other things, payments; taxes; liens; insurance; preservation of the property; inspection of the property; condemnation; assignments; notices to borrower and lender; encumbrances; default and acceleration of the debt; opportunity to cure; lender in possession; and, a non-recourse clause. The Collateral Assignment of Rents, Leases and Profits, which was attached to the amended complaint, contains fifteen paragraphs addressing among other things, preservation of lenders rights; lender's rights on default; tenant's payments to lender; indemnification of lender; further assignments; termination of assignment; and, further assurances. The loan documents expressly deal with the issues involved in the instant action and they clearly demonstrate that the parties intended their contract to cover all eventualities.
The trial court erred in not vacating the default judgment, as to Mr. Ginsberg, because Lennar has failed to state a claim upon which relief may be granted. The claims sued upon are clearly contractual in nature, consequently the counts for conversion, civil theft, and RICO violations cannot lie. It is well established that breach of contractual terms may not form the basis for a claim in tort. Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort. See and compare East River Steamship *495 Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.E.2d 865 (1986) (economic loss rule prohibits tort action where the parties are bound by a contract, failure to receive the benefit of the bargain is a core concern of contract law not tort law); Casa Clara v. Charley Toppino & Sons, 620 So.2d 1244 (Fla. 1993) (purely economic losses are not recoverable in tort); AMF Corp. v. Southern Bell, 515 So.2d 180 (Fla. 1987) (absent personal injury or property damage contract law is more appropriate than tort law in economic loss cases); Aetna v. Therm-O-Disc, 511 So.2d 992 (Fla. 1987) (no cognizable tort damages are sustained absent personal injury or physical property damage); F.P.L. v. Westinghouse Electric, 510 So.2d 899 (Fla. 1987) (contract principles are more appropriate than tort principles for resolving economic losses, Florida law does not allow recovery in tort without a claim for personal injury or property damage); Weimar v. Yacht Club Point Estates, 223 So.2d 100 (Fla. 1969) (where defendant has not committed a breach of duty apart from breach of contract there can be no action in tort); Swaebe v. Sears World Trade, 639 So.2d 1120 (Fla. 3d DCA 1994) (absent a separate and independent tort, breach of contract may not be converted into a tort action); Sanchez v. Encinas, 627 So.2d 489 (Fla. 3d DCA 1993) (bona fide contractual dispute negates any claim for civil theft); Gambolati v. Sarkisian, 622 So.2d 47 (Fla. 4th DCA 1993) (claim for civil theft and conversion may not lie where relationship is contractual in nature); Gilman Yacht Sales v. First Nat. Bank of Chicago, 600 So.2d 1131 (Fla. 4th DCA 1992) (action for civil theft or conversion will not lie in suit for breach of a brokerage contract); Kay v. Katzen, 568 So.2d 960 (Fla. 3d DCA 1990) (action for civil theft and conversion will not lie where claim is clearly contractual in nature); Futch v. Head, 511 So.2d 314 (Fla. 1st DCA) (oral contract will preclude finding of conversion, recovery of damages for breach of contract will not support an award of treble damages under Florida's RICO law), review denied, 518 So.2d 1275 (Fla. 1987); Rosen v. Marlin, 486 So.2d 623 (Fla. 3d DCA) review denied, 494 So.2d 1151 (Fla. 1986) (where damages sought in tort are same as damages sought in contract tort damages are not recoverable); Rolls v. Bliss, 408 So.2d 229 (Fla. 3d DCA 1981) (award of contractual damages may not form basis for an award of tort damages), review dismissed, 415 So.2d 1359 (Fla. 1982). Based upon the reasoning set forth in the above cited cases we hold that Lennar's claims against Mr. Ginsberg are contractual in nature and that as a matter of law the amended complaint fails to state a cause of action upon which relief may be granted.
Lennar alleges counts sounding in tort for conversion and waste against MLG Properties, Inc. In those counts Lennar alleged that MLG owed Lennar a duty not to pay over the rents to Mr. Ginsberg and to protect their security interest in the properties by not allowing the properties to fall into disrepair. Lennar does not allege a contractual relationship with MLG and in fact alleges that MLG had a contractual relationship with both the Loch Lomond and Community Acres partnerships. "The true question in any case involving tort liability is, `has the defendant committed a breach of duty apart from the contract?' If he has only committed a breach of contract, he is liable only to those with whom he has contracted... ." Weimar v. Yacht Club Point Estates, 223 So.2d 100, 103 (Fla. 1969). At best, Lennar's allegations set forth that MLG Properties, Inc. may have failed to perform its duties as property manager. Failure, on MLG's part, to perform its contractual obligations does not give rise to an independent action in tort upon which Lennar may bring suit. See Weimar; Jacobson v. Heritage Quality Const., 604 So.2d 17 (Fla. 4th DCA 1992), review denied, 613 So.2d 5 (Fla. 1993); McElvy, Jennewein, et al. v. Arlington Elec., 582 So.2d 47 (Fla. 2d DCA) review denied 587 So.2d 1327 (Fla. 1991). On the facts of this case Lennar has not alleged a breach of duty separate and apart from the contractual duties which bound MLG and the partnerships, thus MLG can only be held liable to those with whom it has contracted. We find that as a matter of law the counts for conversion and waste against MLG Properties, Inc. *496 fail to state a cause of action upon which relief may be granted.[2]
Lennar alleges that under the assignment from the RTC,[3] their predecessor in interest, it received all the rights and causes of action held by the RTC.[4] We disagree with Lennar's interpretation of the Assignment of Mortgage received from the RTC.
"Initially, we note that assignability of a cause of action is the rule rather than the exception." See Selfridge v. Allstate Ins., 219 So.2d 127, 128 (Fla. 1969). A party may assign almost any cause action, with the noted exception of claims for personal injury. See and compare Selfridge; Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla. 1960); State Road Dept. v. Bender, 147 Fla. 15, 2 So.2d 298 (1941); Notarian v. Plantation AMC Jeep, 567 So.2d 1034 (Fla. 4th DCA 1990). Where the cause of action arises out of an injury to property, that action is personal to the owner of the property and a party who subsequently takes title to the property, without receiving an assignment of that cause of action, may not pursue that cause of action. See Selfridge; Florida Power. In order to pursue a cause of action the subsequent purchaser of the property must allege that they became owner of the property after the damage was done and "that by assignment, he became possessed of all rights and causes of action which the original owners possessed." Bender, 2 So.2d at 299.
The Assignment of Mortgage is, as it states, an assignment of all of the RTC's rights and interests in the mortgage and related collateral. The Assignment of Mortgage makes no mention of, or attempt to, assign to Lennar any cause of action held by the RTC. In order for Lennar to pursue an action based on a cause of action held by the RTC Lennar must allege a valid assignment of that cause of action from the RTC. Lennar has failed to allege, and the exhibits attached to the amended complaint do not demonstrate, that the assignment from the RTC, gave Lennar any right to prosecute any cause of action previously held by the RTC. Since Lennar did not, and cannot, allege a valid assignment the amended complaint fails to allege a cause of action upon which relief may be granted.
Assuming, arguendo, that the amended complaint properly alleged independent torts which Lennar had the right to prosecute we would still hold that the amended complaint fails to set forth a cause of action upon which relief may be granted.
Lennar argues that section 697.07, Florida Statutes (1993)[5] should be applied retroactively and that section 697.07 *497 governs in instant action. We agree with Lennar that section 697.07, Florida Statutes (1993) should be applied retroactively and that it governs in the instant action. In Ormond Beach Assoc. Limited Partnership v. Citation Mortgage, Ltd., 634 So.2d 1091 (Fla. 5th DCA 1994) the court held that section 697.07, Florida Statutes was remedial in nature and thus may be applied retroactively. We agree with our sister court that "section 697.07 does not purport to cause the transfer of an ownership interest in the rents, [but] merely ... establish[es] procedures designed to give effect to the parties' rent assignment." Id. at 1092 (citations omitted). Further, we believe it was the intent of the Legislature that section 697.07 be applied retroactively. In 1993 the Legislature amended section 697.07, in part, in response to several cases which held the statute not to be applicable retroactively. See House Rep. Judiciary Comm., Bill Analysis of CS/HB 1033, at 1 (March 5, 1993). The House Judiciary Committee analysis states that "Since the bill no longer contains the provision that the assignment `shall be absolute upon mortgagor's default' it appears that the new provisions could be construed to be retroactive." Id. at 5. The 1993 amendment did away with the argument that the statute altered the substantive rights of the parties and thus could not be applied retroactively. Statutes which do not change the substantive rights of the parties and which are merely procedural in nature may be applied retroactively. See Alamo v. Mancusi, 632 So.2d 1352 (Fla. 1994); Department of Agriculture and Consumer Services v. Bonanno, 568 So.2d 24 (Fla. 1990); Serna v. Milanese, 643 So.2d 36 (Fla. 3d DCA 1994). We hold that section 697.07, Florida Statutes (1993) is procedural in nature and should be applied retroactively.
Lennar alleges that under section 697.07, Florida Statutes their right to the rents vested *498 immediately, without notice, upon default by the borrowers. Lennar reaches this conclusion by interpreting section 697.07(3) as allowing the parties to an assignment of rents to contract away the necessity of a written demand for those rents.
We disagree with Lennar's interpretation of the statute. Section 697.07, Florida Statutes is procedural, it sets out the steps a mortgagee must take in order to enforce an assignment of rents. As we understand section 697.07 a mortgagor and mortgagee are free to contract for an assignment of rents, and enforcement of that assignment will be governed by the statute. According to the statute an assignment of rents creates a lien on the rents in favor of the mortgagee, and the mortgagee will have the right to foreclose that lien and collect the rents, without the necessity of foreclosing on the underlying mortgage. Unless the parties have agreed otherwise, the statute gives a mortgagee the right to pursue his remedies automatically upon default by the mortgagor. But, before the mortgagee may pursue those remedies the mortgagee must make a written demand for the rents. Written demand by the mortgagee does not give title to the rents, title only passes upon possession, but merely gives the right to bring an action to foreclose on that lien upon refusal of the mortgagee to pay over the rents. The mortgagee's lien embraces only those rents in the mortgagor's possession at the time of the demand and those collected thereafter. Finally, a mortgagee's right to pursue foreclosure is subject to two conditions precedent: 1) the assignee must make a written demand for the rents; and, 2) the mortgagee must refuse to turn over the rents.[6]
Lennar has failed to demonstrate a right to the rents under the statute because Lennar has not alleged a written demand[7] for the rents as required by the statute. A written demand for the rents was absolutely necessary. Lennar may not now claim, under the statute, a possessory interest in those rents.
Assuming, which we do not, that a demand for the rents was not necessary or that a proper demand had been made, Lennar still has not alleged a right to possession of the rents. We reach this conclusion because even if Lennar and the borrowers had contracted away the necessity of a demand or if a proper demand was made, Lennar, at best, under the statute, only held a lien on the rents. In order to reduce that lien to possession Lennar was required to foreclose on the lien. Lennar has not alleged that it foreclosed on the lien, thus it cannot claim, under the statute, a right to possession of the rents. See and compare Seymour v. Adams, 638 So.2d 1044 (Fla. 5th DCA 1994) (a lien or *499 claim of lien without more does not necessarily denote a right of possession); Van Hoose v. Robins, 165 So.2d 209 (Fla. 2d DCA 1964) (same).
Lennar alleges that pursuant to the loan documents they had an immediate right to possession of the rents upon default by the borrowers. We disagree with Lennar's interpretation. The pertinent loan documents all point to paragraph 18 of the mortgage note in the event of default. As we understand paragraph 18[8] Lennar, upon default by the borrower, had an automatic right to pursue its remedies under the loan documents, not an automatic and immediate right to possession of the rents. Under the loan documents Lennar had many remedies none of which automatically vested upon default. Although Lennar had the right to take possession of the properties;[9] accelerate the debt;[10] operate the property;[11] collect and possess the rents;[12] and generally every right, cause of action and remedy available under applicable law, these rights, by their terms, required some affirmative act by Lennar prior to their becoming vested. Nowhere in Lennar's complaint do they allege that they took any affirmative steps as set forth in the loan documents, or, for that matter, that they took any action consistent with the loan documents. It cannot be said, on these pleadings, that Lennar has properly alleged an immediate right to possession of the rents under the loan documents.
Because Lennar has not alleged an immediate right to possession of the rents Count I for conversion must fail. "In order to maintain an action for conversion, one must have possession of the property or an immediate right to possession." Scherer v. Labors International Union, 746 F. Supp. 73, 84 (N.D.Fla. 1988); see also Dekle v. Calhoun, 60 Fla. 53, 53 So. 14 (1910); Seiff v. Presto Brick, 168 So.2d 700 (Fla. 3d DCA 1964), certiorari denied, 174 So.2d 31 (Fla. 1965). Lennar fails to state a cause of action for conversion because Lennar has not alleged a present possessory right to the rents under the loan documents.
*500 Assuming, which we do not, that Lennar did have a possessory right in the rents, Count I would still fail to state a cause of action. Count I fails because Lennar does not allege that they have made a demand[13] for return of the rents or that such a demand, if made, would have been futile. See Senfeld v. Bank of Nova Scotia, 450 So.2d 1157 (Fla. 3d DCA 1984).
A conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met. However a demand and refusal are unnecessary were it would be futile and the act preventing a return results in a depriving of possession and, thus equates to a conversion.
Shelby Mutual Ins. v. Crain Press, 481 So.2d 501, 503 (Fla. 2d DCA 1985), review denied, 491 So.2d 278 (Fla. 1986).
The demand required by Shelby is separate and distinct from any demand made necessary by the loan documents or under the statutes which govern mortgages in the State of Florida. The Shelby demand is an essential element in any claim for conversion and failure to make such a demand or allege the futility of doing so is fatal.
In Count II Lennar alleges that MLG committed waste upon the Loch Lomond and Community Acres properties, and that that waste impaired Lennar's security interest in those properties.[14] Lennar fails to make any allegations regarding the value of the properties prior to or after the alleged waste occurred. To properly allege impairment of security one must allege that the value of the property is no longer equal to or greater that the debt owed. As this court stated in European American Bank v. Dupont Building Associates, 567 So.2d 971 (Fla. 3d DCA 1990), review denied, 581 So.2d 164 (Fla. 1991):
A mortgagee may have an action on the case for damages resulting from wrongful injury to the mortgaged property, whereby the property is rendered of less value as security for the mortgage debt; the damages to be awarded being the amount of injury to the security resulting from the damage to the property.
European American Bank, 567 So.2d at 972.
European American Bank v. Dupont Building Associates stands for the proposition that when a mortgagee brings an action for injury to a security interest the mortgagee is entitled to 100% security for the debt owed and not, unless otherwise contracted for, more than that.[15] Thus, in order for a mortgagee to allege waste against a third party the mortgagee must demonstrate that the mortgage security has been injured and is now worth less than the amount of the outstanding debt.
Based on the above reasoning Count II must fail. Lennar has not alleged a cause of action for impairment of a security interest because Lennar has failed to allege the value of the property before or after the alleged waste and that the property is now worth less than the outstanding mortgage debt.
In Count III Lennar alleges civil theft. As stated above, Lennar has failed to allege a possessory interest in the rents. Since Lennar has not stated a right to possession of the rents Lennar may not state a cause of action for civil theft of those rents. Civil theft requires that one knowingly obtain or use the property of another.[16] Simply put the rents were not Lennar's and Lennar may *501 not complain that they have been stolen from them.
Furthermore, Lennar may not, as a matter of law under these facts, plead an intent to commit theft. Since Lennar has failed to plead a possessory interest in the rents the natural inference is that the rents were properly in the possession of Ginsberg or MLG. "Under Florida law, a necessary element for establishing the crime of theft is that the defendant had, prior to the commission of the act, an intent to commit a theft." Rosen v. Marlin, 486 So.2d 623, 625 (Fla. 3d DCA), review denied, 494 So.2d 1151 (Fla. 1986). Ginsberg and MLG were rightfully in possession of the rents, thus they could not form the necessary intent to steal those rents. Rosen. As a matter of law, under these facts, Lennar has failed to allege a cause of action for civil theft.
In Count IV Lennar alleges a violation of The Florida Civil Remedies for Criminal Practices Act. Section 772.103(3), Florida Statutes,[17] Florida's RICO statute, applies only where there has been some sort of ongoing criminal behavior. Its purpose is to punish, through civil penalties, actions which are ongoing and criminal in nature. Florida's Civil Remedies for Criminal Practices Act simply cannot apply where there has been no criminal activity. There can be no cause of action under section 772.103(3), Florida Statutes for the operation of a criminal enterprise dedicated to the ongoing theft of the rents if the rents have not been and could not have been stolen by those allegedly doing the stealing.
Furthermore, Lennar has not properly alleged the necessary predicate acts or continuity of endeavor required to maintain an action under section 772.103, Florida Statutes.
A party alleging a RICO violation may demonstrate continuity over a closed period of time by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.
State v. Lucas, 600 So.2d 1093, 1094 (Fla. 1992) (citing to H.J. Inc. v. Northwestern Bell, 492 U.S. 229, 242, 109 S.Ct. 2893, 2901-02, 106 L.Ed.2d 195 (1989)).
Lennar does not allege that the theft of rents occurred over a substantial period of time or that there was a threat that the thefts would or could continue to occur over a long period of time during the future. Lennar's allegations merely track the language of the statute in an attempt to allege a cause of action. A party does not properly allege a cause of action by alleging in conclusive form, which tracks the language of the statute, acts which lack factual allegations and merely state bare legal conclusions. See Becerra. Because Lennar has failed to allege criminal conduct of an ongoing nature Count IV must fail.
In Count V Lennar alleges a violation of section 772.103(4), Florida Statutes.[18] This count alleges an on-going conspiracy to commit the theft of the rents.
"In order to be guilty of conspiring to violate . .. [a criminal] statute it must be proved that appellant agreed with another to commit a criminal offense while intending to commit the offense." Bragg v. State, 487 So.2d 424, 426 (Fla. 5th DCA 1986). The state must prove the acts contemplated in the conspiracy would constitute an offense under a Florida statute... . Beke v. State, 423 So.2d 417, 419 (Fla. 2d DCA 1982).
LaPolla v. State, 504 So.2d 1353, 1357 (Fla. 4th DCA 1987).
*502 A conspiracy is only unlawful when there is an intent to achieve an illegal goal. As demonstrated above Lennar cannot allege an intent to steal the rents. Since neither Ginsberg nor MLG could have intended to steal the rents, they cannot be held to have conspired among themselves or with others to steal those same rents. Since Lennar has failed to allege a criminal intent to commit a crime, it has failed to allege a conspiracy to commit a crime and Count V must fail.
Accordingly, the order denying the motion to vacate default judgment is reversed with directions to dismiss Lennar's Amended Complaint for failure to state a cause of action upon which relief may be granted.
Reversed with directions.
NOTES
[1] Lennar's Amended Complaint addressed a third partnership, Homestead Associates Limited Partnership. Lennar has settled all claims against Mr. Ginsberg and MLG Properties, Inc. with regard to the Homestead Associates mortgage and property.
[2] We note that Lennar has not alleged that they are third party beneficiaries of the contract between MLG Properties, Inc. and the Loch Lomond and Community Acres partnerships. Had they so alleged the counts would still fail because the record does not demonstrate the requisite intent between the parties to the contract to benefit Lennar. See Weimar; Jacobson; and McElvy.
[3] The assignment of mortgage from the RTC to Lennar in pertinent part reads as follows:

RTC Corporation ... for good and valuable consideration ... hereby absolutely sells, transfers, assigns, delivers and conveys to Lennar Florida Partners ... without recourse:
The mortgage or deed of trust loan ... including the promissory note(s) evidencing the Mortgage Loan and all liens and security interests securing the payment of the Mortgage Loan and all documents and instruments evidencing, securing or relating to the Mortgage Loan ... further including ... the mortgage or deed of trust and any other documents recorded in the real property or chattel records....
This Assignment includes the full indebtedness secured by the forgoing in accordance with the terms of that certain Commercial Mortgage Loan and Real Property Purchase Agreement ... by and among Assignor, Assignee ... and other parties.
[4] Lennar does not allege that the acts complained of occurred during their ownership of the mortgages in question. The Amended Complaint demonstrates that the defaults complained of occurred, prior to the assignment to Lennar, in late 1991 and that the RTC instituted foreclosure proceedings and a receiver was appointed. The acts Lennar now complains of began at the time of the borrowers default and ceased with the appointment of a receiver, thus, all relevant events occurred prior to Lennar's ownership of the mortgages in question. Assuming, which we don't, that independent torts were committed by either Ginsberg or MLG, those torts could only have been committed against the RTC and thus were personal to the RTC.
[5] Section 697.07 Florida Statutes (1993) reads as follows:

(1) A mortgage or separate instrument may provide for an assignment of rents of real property or any interests therein as security for payment of an indebtedness.
(2) If such assignment is made, the mortgagee shall hold a lien on the rents, and the lien created by the assignment shall be perfected and effective against third parties upon recordation of the mortgage or separate instrument in the public records in the county in which the real property is located, according to law.
(3) Unless otherwise agreed to in writing by the mortgagee and mortgagor, the assignment of rents shall be enforceable upon the mortgagor's default and written demand for the rents made by the mortgagee to the mortgagor, whereupon the mortgagor shall turn over all rents in the possession of the mortgagor at the time of the written demand or collected thereafter (the "collected rents") to the mortgagee less payments of any expenses authorized by the mortgagee in writing.
(4) Upon application by the mortgagee or mortgagor, in a foreclosure action, and not with-standing any asserted defenses or counterclaims of the mortgagor, a court of competent jurisdiction, pending final adjudication of any action, may require the mortgagor to deposit the collected rents into the registry of the court, or in such other depository as the court may designate. However, the court may authorize the use of the collected rents, before deposit into the registry of the court or other depository, to:
(a) Pay the reasonable expenses solely to protect, preserve, and operate the real property, including without limitation, real estate taxes and insurance;
(b) Escrow sums required by the mortgagor or separate assignment-of-rents instrument; and
(c) Make payments to the mortgagee.
The court shall require the mortgagor to account to the court and the mortgagee for the receipt and use of the collected rents and may impose other conditions on the mortgagor's use of the collected rents.
(5) Nothing herein shall preclude the court from granting any other appropriate relief regarding the collected rents pending final adjudication of the action. The undisbursed collected rents remaining in the possession of the mortgagor or in the registry of the court, or in such other depository as ordered by the court, shall be disbursed at the conclusion of the action in accordance with the court's final judgment or decree.
(6) The court shall expedite the hearing on the application by the mortgagee or mortgagor to enforce its assignment of rents. The procedures authorized by this statute are in addition to any other rights or remedies of the mortgagee or mortgagor under the mortgage, separate assignment-of-rents instrument, promissory note, at law or in equity.
(7) Nothing here shall alter the lien priorities, rights, or interests among mortgagees or other lien holders or alter the rights of the mortgagee under the mortgage, separate assignment-of-rents instrument, promissory note, at law or in equity, concerning rents collected before the written demand by the mortgagee. A mortgagee's enforcement of its assignment of rents under this statute shall not operate to transfer to any rents not received by the mortgagee.
(8) Any moneys received by the mortgagee pursuant to this statute shall be applied by the mortgagee in accordance with the mortgage, separate assignment-of-rents instrument, or promissory note, and the mortgagee shall account to the mortgagor for such application.
[6] "The bill [amending section 697.07] provides: 1) that the assignment of rents of real property creates a lien on the rents; 2) that a mortgagee is entitled to collect rents due to the mortgagor without the necessity of commencing legal proceedings; 3) that it is only when the mortgagee receives the rents that title transfers and that the sending of a demand for the rents does not transfer title to future rents to the mortgagee; and 4) that if the mortgagor fails to turn the rents over to the mortgagee, the mortgagee must bring an action to foreclose the lien on the rents."

See House Rep. Judiciary Comm., Bill Analysis of CS/HB 1033, at 1 (March 5, 1993).
[7] Although Lennar did not attach to the amended complaint a copy of any notice or demand, made by themselves or their predecessors in interest, to the borrowers they generally alleged that "The RTC notified [borrowers] of the existence of the [borrowers] Defaults on March 2, 1992. No later than this date, pursuant to the ... Loan Documents the RTC (Lennar's predecessor-in-interest) became the owner of all of the rents... ." Further, Lennar generally alleged that all conditions precedent have been met prior to the bringing of this action.

The law is well settled that an assignee succeeds to his assignor's rights under the assignment of a contract and takes it with all the burdens to which it is subject in the hands of the assignor. If the assignee seeks to enforce the contract, he must show that all conditions have been performed either by himself or the assignor.
Shreve Land Co. v. J & D Financial Corp., 421 So.2d 722, 724 (Fla. 3d DCA 1982) (citations omitted).
Lennar's allegations do not set forth a written demand for the rents or "show that all conditions have been performed." At best these allegations set forth that the borrowers were notified, by the RTC, that they were in default and nothing more. We hold that these allegations do not sufficiently allege a written demand as required by the section 697.07 Florida Statutes or show that all conditions precedent have been performed either by Lennar or the RTC as required by Shreve.
[8] Paragraph 18 of the mortgage note reads in pertinent part as follows:

"Default; Acceleration and Other Remedies: At Lender's option in each instance, Borrower's breach or failure to meet any of the terms, provisions, conditions, covenants or agreements in this mortgage or those in any of the Loan Documents executed in connection with the Loan shall constitute a Loan default and, concurrently, a default under each and every Loan Document. Thereupon, except as expressly otherwise provided in this paragraph 18, Lender shall forthwith and without condition precedent have every right, cause of action and remedy under applicable law not expressly prohibited to Lender or otherwise specifically limited under the provisions of the Loan Documents (Lender's Remedies herein), including without limitation, the acceleration of indebtedness, foreclosure by judicial proceedings and sale of property pursuant thereto.
a) Monetary Default: Lender's right to pursue its Remedies shall automatically accrue, at Lender's option, unconditionally and without notice, in the event of any of the following "Monetary Defaults": (i) when any monthly installment due from the Borrower under the Note is not received by Lender within thirty (30) days of its due date; or (ii) ... (iii) ... (iv) when any other monetary sum payable by borrower under the Loan Documents is not received by Lender or otherwise made, as applicable, within fifteen (15) days of the date of written demand from Lender therefore; or (v)... ."
[9] The loan agreement in pertinent part reads as follows: Possession Rights of Lender upon default: Borrower agrees, upon default and the expiration of any curative opportunity applicable thereto under the Mortgage, at the request of the Lender, to vacate the premises and permit Lender:

(i) to enter into possession
[10] The promissory note in pertinent part reads as follows: Remedies Upon Default: If default shall occur as defined in this Note, ... the entire principal balance outstanding and all accrued interest thereon shall immediately become due and payable, at the option of the Lender.
[11] The collateral assignment of rents, leases and profits in pertinent part reads as follows:

Lender's Rights Upon Loan Default... . Lender ... may:
(a) manage and operate the premises ...
[12] The collateral assignment of rents, leases and profits in pertinent part reads as follows:

Tenant's Payments to Lender. Upon the occurrence, and failure to cure within any applicable curative periods, of any event of default under the terms of the Note, this Assignment or any other Loan Document collateral thereto, Borrower hereby irrevocably directs each tenant under the assigned Leases, immediately upon notice and demand to tenant by Lender, to pay to Lender all rents accruing, due or past due, under the Assigned Leases upon and after receipt of such demand and notice... .
[13] See supra note 7.
[14] In Florida a mortgagee may bring an action against a third party for wrongful destruction of property secured by a mortgage. See Moseley v. Bi-Lo Supermarket Inc., 341 So.2d 222 (Fla. 3d DCA 1977).
[15] See also Allstate Finance v. Zimmerman, 272 F.2d 323 (5th Cir.1959) (where damage to a mortgaged property occurs the right of action by the mortgagee is only for an amount not exceeding the mortgage debt).
[16] Section 812.014, Florida Statutes reads in pertinent part as follows:

(1) A person commits a theft if he knowingly obtains or uses, or endeavors to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
[17] Section 772.103, Florida Statutes reads in pertinent part as follows:

Prohibited Activities. It is unlawful for any person:
(3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.
[18] Section 772.103 Florida Statutes reads in pertinent part as follows:

Prohibited Activities. It is unlawful for any person:
(4) To conspire to violate any of the provisions of subsection (1), subsection (2), or subsection (3).