946 So.2d 1079 (2006)
David A. SIEGEL, Appellant,
v.
Bettie I. WHITAKER, f/k/a Bettie I. Siegel, Appellee.
No. 5D05-2652.
District Court of Appeal of Florida, Fifth District.
November 9, 2006.
Certification Denied December 18, 2006.
*1080 Keith Mitnik, of Morgan & Morgan, P.A., Orlando, for Appellant.
Mayanne Downs, of King, Blackwell, Downs & Zehnder, P.A., Orlando, for Appellee.
PLEUS, C.J.
David Siegel appeals from a final judgment entered in favor of his former wife, Bettie Whitaker.
The parties were divorced in 1997 and their financial affairs were resolved pursuant to a Marital Settlement Agreement ("MSA"). The relevant provisions of the MSA provide:
6. SETTLEMENT TERMS. This Marital Settlement Agreement is intended to resolve all business and marital property issues, and all claims between the parties (except for those issues and claims arising under this Marital Settlement Agreement), including but not limited to, any claims for equitable distribution of assets and properties, as well as any claims for alimony. DAS [former husband] shall pay to BIS [former wife] or her estate the sum of $200,000,000.00 in consideration for which BIS shall transfer, convey, and assign to DAS all of her stock and property interests in Central Florida Investments, Inc. ("CFI"), Westgate Resorts, Ltd. ("Resorts"), their related and affiliated entities identified as signatories to that certain Stock Pledge and Escrow Agreement executed by the parties of even date herewith, and all other entities, marital properties and assets that are owned either jointly or individually by DAS and BIS (except those specifically reserved to BIS as provided for elsewhere in this Settlement Agreement), which foregoing entities are hereinafter referred to singly or in the aggregate as the "CFI Entities."
. . . .
7.(b) Transfer of Properties. The balance of the total settlement amount . . . shall be satisfied by the transfer, conveyance and assignment by DAS to BIS . . . of all right, title, or interest that he has or may have in the following marital properties: (1) The Chase Road House . . . , together with all of its contents, motor vehicles and boats usually found on or about said real property.
*1081 Prior to their divorce, the parties resided at the Chase Road home, from 1994, when it was completed, to October, 1996. In 1999, the former wife filed a lawsuit in Orange County Circuit Court against Capri Homes, Inc., general contractor on the home, and a consultant, Mario Prieto, alleging construction defects in installation of the windows at the Chase Road residence. Her claim included counts for breach of implied warranty, breach of oral contract, and fraudulent inducement based on the design and construction of the home.
The former husband did not seek to intervene in the Capri/Prieto litigation but instead, in June 2004, filed a three-count complaint against the former wife alleging that the Capri/Prieto claim was a chose in action which belonged to him under the MSA. The former husband alleged breach of the MSA, sought injunctive relief, and asked for a constructive trust in his favor in the amount recovered by the former wife.
The former wife answered denying that her former husband was entitled to relief, and filed a motion to dismiss with prejudice or alternative motion for judgment on the pleadings.
The former husband interposed a motion for summary judgment which took the position that reference in the MSA to the Chase Road home was insufficient as a matter of law to grant the former wife any rights to the Capri/Prieto claim. According to the former husband, because the Capri/Prieto claim was not specifically referenced in the MSA as an asset to be retained by the former wife, he was entitled to the claim.
The Capri/Prieto lawsuit was settled in 2005. The trial court entered an order granting the former wife's motions and denying the former husband's motion. The court noted that the former husband had actually filed an affidavit in the Capri/Prieto litigation asserting that the claim was time-barred. The court concluded that the former wife's construction of the MSA was more persuasive, that the former husband's transfer of all his "right, title or interest" in the Chase Road house included whatever right he may have had in the chose in action related to the house.
This court applies the de novo standard of review where the trial court grants judgment as a matter of law. See, e.g., Martinez v. Florida Power & Light Co., 863 So.2d 1204 (Fla.2003) (granting motion for judgment on the pleadings); Rittman v. Allstate Insurance Co., 727 So.2d 391 (Fla. 1st DCA 1999) (dismissing complaint for failure to state cause of action).
In passing on a motion for judgment on the pleadings made by a defendant, all well-pleaded material allegations of the complaint and all fair inferences to be drawn therefrom are taken as true and the inquiry concerns whether the plaintiff has stated a viable cause of action. Martinez. The applicable test is the same as if the defendant made a motion to dismiss for failure to state a cause of action. Henao v. Professional Shoe Repair, 929 So.2d 723 (Fla. 5th DCA 2006). A motion for judgment on the pleadings is decided only on the pleadings and attachments thereto and may be granted only if the movant is entitled to judgment as a matter of law. Thompson v. Napotnik, 923 So.2d 537 (Fla. 5th DCA 2006).
The former husband initially argues that the former wife impermissibly relied entirely on allegations contained in her answer and affirmative defenses in obtaining judgment on the pleadings. See Jaramillo v. Dubow, 588 So.2d 677 (Fla. 3d DCA 1991) (defendant cannot obtain judgment on the pleadings on basis of allegations contained in his or her answer or affirmative *1082 defenses since such allegations are deemed denied and taken as false). This contention, however, ignores the fact that the former husband, in his complaint, quotes from paragraph 7(b) of the MSA. The former husband additionally attached the MSA as an exhibit to his complaint. The trial court's ruling in favor of the former wife is expressly predicated on matters contained in the complaint and attachments thereto.
The thrust of the former husband's complaint is twofold: (1) that the Capri/Prieto claim was a chose in action which constituted marital property, see Hoirup v. Hoirup, 862 So.2d 780 (Fla. 2d DCA 2003) (referring to chose in action as a marital asset), which (2) was retained by the former husband under paragraph 6 of the MSA.
The former wife concedes the claim was marital property but maintains that it was distributed to her under paragraph 7(b) of the MSA.
The former husband relies on Ginsberg v. Lennar Florida Holdings, Inc., 645 So.2d 490 (Fla. 3d DCA 1994) for the contention that his former wife could not bring the Capri/Prieto claim without an assignment from him. In that case, Ginsberg owned and operated MLG Properties, Inc. ("MLG"), a property management firm. Ginsberg was also the general partner of two limited partnerships each of which owned an apartment complex. Both complexes were managed by MLG. In 1988, both limited partnerships gave mortgages to Amerifirst Bank on their properties which mortgages Ginsberg signed as general partner.
Lennar Florida Holdings, Inc. and MS Florida Corporation were general partners of a real estate investment limited partnership, which was the mortgage holder on the apartment complexes. Lennar purchased these mortgages from the Resolution Trust Corp. ("RTC") in July of 1992. The RTC had acquired these mortgages in March of 1991 from Amerifirst Bank after the RTC was appointed receiver of Amerifirst.
Lennar filed a complaint against Ginsberg and MLG alleging conversion, civil theft, RICO violations and Chapter 772.103(4) violations against Ginsberg and MLG and waste against MLG. Lennar attached a copy of the assignment of mortgage from the RTC and original mortgage loan agreement.
The Third District ruled that Lennar had not alleged a breach of duty separate and apart from the contractual duties which bound MLG and the partnerships, and that MLG could only be liable to those with whom it had contracted. The court also found that as a matter of law the counts for conversion and waste against MLG failed to state a cause of action upon which relief could be based. The Third District stated:
"Initially, we note that assignability of a cause of action is the rule rather than the exception." See Selfridge v. Allstate Ins., 219 So.2d 127, 128 (Fla.App.1969). A party may assign almost any cause of action, with the noted exception of claims for personal injury, see and compare Selfridge; Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla.App.1960); State Road Dep't v. Bender, 147 Fla. 15, 2 So.2d 298 (1941); Notarian v. Plantation AMC Jeep, 567 So.2d 1034 (Fla. 4th DCA 1990).
. . . .

Where the cause of action arises out of an injury to property, that action is personal to the owner of the property and a party who subsequently takes title to the property, without receiving an assignment of that cause of action, may *1083 not pursue that cause of action. See Selfridge; Florida Power.

In order to pursue a cause of action the subsequent purchaser of the property must allege that they became owner of the property after the damage was done and "that by assignment, he became possessed of all rights and causes of action which the original owners possessed." Bender, 2 So.2d at 299 (emphasis added).
645 So.2d at 496.
The appellate court continued:
The Assignment of Mortgage is, as it states, an assignment of all of the RTC's rights and interests in the mortgage and related collateral. The Assignment of Mortgage makes no mention of, or attempt to, assign to Lennar any cause of action held by the RTC. In order for Lennar to pursue an action based on a cause of action held by the RTC Lennar must allege a valid assignment of that cause of action from the RTC. Lennar has failed to allege, and the exhibits attached to the amended complaint do not demonstrate, that the assignment from the RTC, gave Lennar any right to prosecute any cause of action previously held by the RTC. Since Lennar did not, and cannot, allege a valid assignment the amended complaint fails to allege a cause of action upon which relief may be granted.
Id.
Ginsberg, insofar as its assignment language is concerned, is inapplicable to the present case. In holding that a subsequent owner of real property cannot sue for damage to the property predating his or her ownership in the absence of an assignment of the cause of action from the grantor, Ginsberg is distinguishable. The former wife in this case was a co-owner of the Chase Road house at the time the cause of action accrued and thus had an ownership interest in the cause of action without the need for an assignment by some previous owner. Depending on the language of the MSA, the former husband could have been an indispensable party to the litigation but a formal assignment of the cause of action to the former wife was unnecessary. See Smith v. Spitale, 675 So.2d 207 (Fla. 2d DCA 1996) (in lawsuit for construction defects in home bought by married couple who later divorced, former wife's transfer of her interest in the home did not necessitate need for assignment of cause of action from her to the former husband; former husband was continuous owner of the property and was a real party in interest).
The essential inquiry revolves around the language of the MSA. The MSA does not expressly refer to the claim so the former husband argues that its allocation is governed by the language in paragraph 6 that "all other . . . marital properties and assets that are owned either jointly or individually by the" parties which were not specifically reserved to the former wife belong to the former husband. The trial court disagreed, ruling that the former husband's transfer to the former wife of all his "right, title or interest" included whatever right he may have had in the "chose in action" related to the house. The court's legal analysis is sound.
Settlement agreements are interpreted in accordance with laws governing contracts. Johnson v. Johnson, 848 So.2d 1272 (Fla. 2d DCA 2003). A court must construe a contract in a manner that accords with reason and probability and avoid an absurd construction. Kipp v. Kipp, 844 So.2d 691 (Fla. 4th DCA 2003). Terms are to be construed to promote a reasonable, practical and sensible interpretation consistent with the intent of the *1084 parties. United States Fire Ins. Co. v. Pruess, 394 So.2d 468 (Fla. 4th DCA 1981).
Pursuant to the MSA, the former husband did not merely transfer title to the Chase Road house to the former wife  he transferred all of his "right, title or interest that he has or may have" in the house to the former wife. The broad language encompassed not merely legal title but any "interest" the former husband may have had in the house. The construction defects which formed the basis for the Capri/Prieto claim existed at the time the MSA was executed. The claim arose directly out of (mis)construction of the Chase Road house and the measure of damages recoverable on such claim was the amount necessary to cure the construction deficiencies. See Michael David Ivey, Inc. v. Salazar, 903 So.2d 329 (Fla. 5th DCA 2005) (where performance of a construction contract is defective, measure of damages is reasonable cost of making the performed work conform to the contract). The claim directly and necessarily related to the Chase Road house and amounted to an "interest" in said house which was transferred to the former wife by the terms of the MSA. The trial court correctly entered judgment on the pleadings in favor of the former wife on the basis that the language of the MSA allocated the Capri/Prieto cause of action to her.
This conclusion disposes of the former husband's claim that at the very least, he was entitled to a one-half interest in the cause of action. This contention, raised below not in the complaint but in a footnote to the former husband's motion for summary judgment, presupposes that the MSA did not distribute the chose in action. None of the cases referenced by the former husband for the proposition that joint owners of real property are entitled to share in an award of damages for injury to the land occurring during such joint ownership[1], involve consideration of the effect of a marital settlement agreement. The MSA here distributed the chose in action to one party or the other and unfortunately for the former husband, such distribution was made to the former wife.
AFFIRMED.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] See e.g., Florida Citrus Nursery, Inc. v. Dep't of Agriculture & Consumer Affairs, 570 So.2d 1355 (Fla. 2d DCA 1990); Canney v. City of St. Petersburg, 466 So.2d 1193 (Fla. 2d DCA 1985).