# Third District Court of Appeal

## State of Florida

Opinion filed December 31, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0670
Lower Tribunal No. 19-14281-CA-01
_____

## Boca Aircraft Maintenance, LLC, et al.,
Appellants,

vs.

## Fifteen Group Capital, LLC,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Weiss Serota Helfman Cole & Bierman, P.L., and Edward G. Guedes, for appellants.

Rosenthal Law Group and Alex P. Rosenthal and Amanda Jassem Jones (Weston), for appellee.

Before EMAS, LOBREE and GOODEN, JJ.

LOBREE, J.

Boca Aircraft Maintenance, LLC ("BAM"), Todd Wilkins, and David Hintzke appeal an order granting leave to amend to assert a claim for punitive damages, a final judgment, and an amended final judgment entered in favor of Fifteen Group Capital, LLC ("Fifteen"). We reverse as we conclude that Fifteen is precluded from seeking tort and punitive damages based on the independent tort rule.

**BACKGROUND**

In July 2018, Fifteen's leased Dassault Falcon 50 aircraft ("the Aircraft") was due for inspection and maintenance. Fifteen hired Corporate Air Charters ("CAC") to manage the Aircraft, and Bill Detig, the maintenance director of CAC, was tasked with vetting the qualifications of aircraft repair stations to perform the required maintenance. Detig only considered Part 145 certified aircraft repair stations, and BAM was one of several stations Detig vetted to perform the maintenance.

Eventually, Detig met with Wilkins, BAM's president and sole owner, and Hintzke, BAM's director of technical services, at BAM's facility in Boca Raton in July 2018. Detig, Wilkins, and Hintzke discussed the maintenance that would be provided, and which workers would work on the Aircraft. At the conclusion of the meeting Detig felt that he could recommend BAM to complete the work on the Aircraft. Fifteen and BAM later entered a contract

for the required maintenance.

BAM assigned Jay Wald as the lead technician in connection with the performance of the maintenance. Wald did not have any experience with the exact Falcon 50 type of the Aircraft. Several other mechanics worked on the Aircraft, some of whom did not have experience working on Falcon 50 aircraft. After the required maintenance was completed, the Aircraft was returned to Fifteen.

On February 8, 2019, the Aircraft was flown from Oakland Airport to Los Angeles when an incident occurred. After the Aircraft had touched down, its pilot, Captain Melton, went to retract the flaps when a flap symmetry light illuminated on the warning system and prevented any further movement of the flaps. Melton exited the Aircraft and noticed that the Aircraft's flaps were not fully retracted and the lefthand flap was disengaged and disfigured. Melton's uncontroverted testimony was that the existence of this asymmetry-disengagement of the flaps while the Aircraft is in flight could have resulted in a catastrophic incident. It is undisputed that one of BAM's mechanics, Mason Junco, failed to properly reinstall the flap when the Aircraft was undergoing maintenance. The Aircraft was inspected and repaired at Los Angeles by Dassault, the aircraft manufacturer, and was later relocated to West Star Aviation in Tennessee for reinspection. West Star concluded the

3

Aircraft had many significant equipment and maintenance deficiencies.

Fifteen then filed suit against BAM, Wilkins, and Hintzke on May 9, 2019. Under the operative second amended complaint, Fifteen sought damages for: (1) negligence; (2) negligence per se; (3) breach of oral contract; (4) breach of express warranty; (5) unjust enrichment; (6) fraud; (7) gross negligence seeking punitive damages; and (8) fraud seeking punitive damages. Under each claim Fifteen sought damages for the monies paid to BAM for services it did not properly perform and the cost of repair, diminution of value, and loss of use of the Aircraft.

The matter proceeded to an eight-day bench trial on December 11, 2023, where Detig, Wilkins, and Hintzke all testified. On March 14, 2024, the trial court entered a sixty-page final judgment for Fifteen, concluding, in relevant part: (1) that Wilkins and Hintzke made fraudulent misrepresentations to Detig that induced him to recommend that Fifteen contract with BAM to perform the maintenance; (2) BAM was negligent by failing to meet FAA safety regulations while performing the maintenance; (3) Fifteen was entitled to punitive damages for BAM's gross negligence in failing to properly document the maintenance, inspect, and install the flaps on the Aircraft as its chief inspector tested positive for drugs while performing the inspection and no reinspection was performed; (4) Fifteen was entitled

4

to punitive damages for BAM's intentional misconduct as Wilkins and Hintzke misrepresented to Detig that Falcon 50 trained mechanics would work on the Aircraft in Opa-Locka to induce Detig to recommend Fifteen enter a contract with BAM when in reality BAM had never performed this type of maintenance in Opa-Locka and none of the technicians in Opa-Locka had Falcon 50 experience; and (5) BAM breached the oral contract between itself and Fifteen by failing to properly perform the service stated in the work order.

The trial court allocated specific damages for each claim and awarded Fifteen $180,810.89 in breach of contract damages, $92,200.96 in tort damages, and $1.5 million in punitive damages. The award for the breach of contract damages included the payment to Dassault for repairs after the flap incident, the payment to West Star Aviation for inspection and additional repairs, and prejudgment interest. The award for tort damages (specifically for negligence, gross negligence, and fraud)[1] included the payment to move the Aircraft to West Star Aviation after the flap incident, payment for loss of use and storage of the Aircraft while it was being repaired and inspected post-flap incident, and prejudgment interest.[2] This appeal followed.

---

[1] As no damages were awarded for Fifteen's negligence per se claim, we decline to address it on appeal.

[2] The trial court then entered an amended final judgment correcting a scriveners' error.

5

**STANDARD OF REVIEW**

"When a cause is tried without a jury, the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous." Gutierrez v. Sullivan, 338 So. 3d 971, 973–74 (Fla. 3d DCA 2022) (quoting Universal Beverages Holdings, Inc. v. Merkin, 902 So. 2d 288, 290 (Fla. 3d DCA 2005)). "[M]ixed questions of law and fact . . . require us to employ a mixed standard of review: we defer to the trial court's factual findings (to the extent they are supported by competent, substantial evidence), but we review the trial court's legal conclusions de novo." Ezer v. Holdack, 358 So. 3d 429, 432 (Fla. 4th DCA 2023) (quoting Batur v. Signature Props. of N.W. Fla., Inc., 903 So. 2d 985, 995 (Fla. 1st DCA 2005)).

**ANALYSIS**

"It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc., 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020); see also Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("It is well established that breach of contractual terms may not form the basis for a

claim in tort. Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."). "It is well settled in Florida that . . . . for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach." Peebles v. Puig, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) (citation omitted). Additionally, "[p]unitive damages are generally not recoverable for a breach of contract unless it is accompanied by a separate and independent tort claim." Ghodrati v. Miami Paneling Corp., 770 So. 2d 181, 182 (Fla. 3d DCA 2000).

Here, we conclude that Fifteen had no right to recover tort or punitive damages because the fraud and negligence claims were not independent of the breach of contract claims and Fifteen sought identical damages for all claims. In its tort claims, Fifteen asserted that Wilkins and Hintzke made fraudulent representations, of which BAM was aware, to Detig that: (1) BAM employed mechanics with extensive experience, "specifically with the Dassault Breguet Falcon 50," who were experienced to perform the maintenance; (2) these "Falcon 50" mechanics were all located in BAM's service station in Boca Raton but would be relocated to its Opa-Locka

7

service station to perform the maintenance; (3) these experienced "Falcon 50" mechanics would be the specific mechanics who performed and supervised the entire scope of the maintenance on the Aircraft. Fifteen contended these fraudulent misrepresentations induced Fifteen to enter the contract with BAM and BAM negligently failed to repair the Aircraft. Fifteen, however, fails to demonstrate what separate and distinct damages specifically arose from the alleged misrepresentation that only Falcon-50 trained mechanics would perform maintenance on the Aircraft.

Under Florida law "[a] plaintiff . . . may not recover damages for fraud that duplicate damages awarded for breach of contract." Ghodrati, 770 So. 2d at 183. The only damages awarded by the trial court for the tort claims were the payment to move the Aircraft to West Star Aviation, payment for loss of use and storage of the Aircraft, and prejudgment interest. There is nothing in the record demonstrating how those damages arose separately and distinctly from the damages awarded for the breach of contract claim—i.e., the payment to Dassault for repairs after the flap incident and the payment to West Star Aviation for inspection and additional repairs. All these damages arose from the same incident. The final judgment simply arbitrarily assigned some damages to the tort claims and the remainder to the breach of contract claims, without discussion of how each damage award arose from

the allegedly independent claims.

There is nothing in the record showing that Fifteen suffered any distinct damages separate and apart from those it suffered as a result of BAM's insufficient performance of the contract and the cost of remediating that work. All the injuries Fifteen suffered arose because BAM failed to perform the contract. "Under such circumstances, Florida does not allow a party damaged by a breach of contract to recover the exact same contract damages via a fraud claim." Peebles, 223 So. 3d at 1069; see also Richard Swaebe, Inc. v. Sears World Trade, Inc., 639 So. 2d 1120, 1121 (Fla. 3d DCA 1994) ("[W]ithout proving a separate and independent tort, even flagrant and oppressive breach of contract could not be converted into tort in order to recover punitive damages." (citing Lewis v. Guthartz, 428 So. 2d 222 (Fla. 1982))). As Fifteen's damages resulted from BAM's breach of contract and not any independent, separate, or distinct fraudulent misrepresentations by BAM, Wilkins, or Hintzke, we reverse the final judgment in part, vacate the punitive damages awarded, and remand with instructions for the trial court to determine whether any compensatory damages initially awarded under the tort claims should be allocated as breach of contract damages.

Reversed and remanded for proceedings consistent with this opinion.

9