509 So.2d 1128 (1987)
VINCI DEVELOPMENT COMPANY, a Florida Corporation, Appellant/Cross-Appellee,
v.
Peter W. CONNELL, Trustee, Appellee/Cross-Appellant.
No. 86-726.
District Court of Appeal of Florida, Second District.
May 29, 1987.
Rehearing Denied July 15, 1987.
*1129 V. James Dickson of Rahdert, Acosta & Dickson, P.A., St. Petersburg, for appellant/cross-appellee.
Michael J. Keane and Sarah M. Chaves of Keane, Hayes & Reese, P.A., St. Petersburg, for appellee/cross-appellant.
PER CURIAM.
We have before us an appeal and cross-appeal that arise from an amended final judgment in an action that was started in the trial court by appellant/cross-appellee's (Contractor) complaint for breach of contract and for foreclosure of a mechanic's lien. Appellee/cross-appellant (Owner) counterclaimed in three counts seeking compensatory damages for breach of the construction contract for failure of satisfactory performance and on a theory of constructive fraud, and a claim for punitive damages under the provisions of section 713.31, Florida Statutes (1983), alleging that Contractor exaggerated its claim of lien.
A jury returned a verdict finding Contractor was entitled to $10,791.43 as additional compensation on its contract for work performed for Owner. The jury also returned a general verdict for Owner on the two counts of his counterclaim seeking compensatory damages, but awarded zero damages to Owner.
The Contractor's mechanic's lien foreclosure and Owner's claim based on Contractor's alleged exaggerated lien were both tried before the court. The trial judge, because the jury returned a verdict for Contractor in an amount substantially less than his claim of lien, reluctantly concluded that section 713.31 required him to find that the claim of lien filed by Contractor was an "exaggerated claim" regardless of Contractor's "good-faith" in filing the claim. Therefore, under the terms of section 713.31(2)(b), the trial judge declared that the amount the jury found was owed *1130 Contractor under its contract with Owner was unenforceable as a claim of lien.
The trial judge also reluctantly concluded that section 713.31(2)(c) required an award to Owner of punitive damages in an amount equal to the difference between the amount claimed by Contractor and the amount found due it by the jury verdict. The trial judge determined that difference to be $34,201.23 which amount he awarded (plus $2,000.00 interest on monies placed in escrow) to Owner as "statutory damages." He then set off the amount found due to Contractor from the amount found due Owner as "statutory damages" and entered judgment for Owner for the balance of $25,409.89. Finding Owner to have been the prevailing party, he awarded Owner costs in the amount of $1,194.75 and attorney's fees of $16,500.
On its appeal, Contractor asserts as error two issues which relate to the jury's verdict as to the amount of Contractor's damages. We find no merit in either of those issues. Contractor also asserts as error the trial court's findings, and awards based thereon, that Contractor's claim of lien was a willfully exaggerated claim and, therefore, under the terms of section 713.31(2)(a), a fraudulent lien. We find merit in Contractor's assertions on this point for several reasons which we will later discuss. Based on that finding of error, we reverse the trial court's determination that the amount found by the jury to be due Contractor was unenforceable as a lien. We also reverse the award of punitive damages, costs, and attorney's fees to Owner.
Owner, on his cross-appeal, challenges the zero verdict rendered on his counterclaim. He alleges as error in that regard only an evidentiary issue relating to the court's admission into evidence of a financial statement pertaining to Owner and his wife. Owner argues on his cross-appeal that the evidence of his financial worth in the amount of some $4,000,000 was so prejudicial as to cause the jury to award zero damages even though the jury found for Owner on his counterclaim. We find no merit to that argument by Owner.
During the trial, Owner attempted to depict himself as an unsophisticated, uneducated, and inexperienced businessman to the extent that Contractor was allegedly able to take advantage of him and thereby breach a fiduciary relationship. In reviewing the record, we find there was wide-ranging exploration on both direct and cross-examination of both the principal parties pertaining to their relative experience and business acumen which made the financial statement relevant and, therefore, no error was committed by allowing its introduction. We, therefore, affirm in regard to Owner's cross-appeal.
We now turn to an explanation of why we find that the trial judge erred when he reluctantly concluded that section 713.31, under the circumstances of this case, mandated his finding Contractor's claim of lien unenforceable, and further mandated his award of punitive or "statutory damages" to Owner.
A brief review of the facts pertaining to the case is necessary to our explanation. Contractor and Owner entered into a contract that called for Contractor to build Phase I of a shopping center on Owner's property located on U.S. 19 north of Clearwater. Phase I consisted of two buildings, one to have retail tenants and the other to have office space. The contract called for the construction of the shell of the buildings and some basic interior work. Additional interior finishing work was initially contemplated, but no plans existed for such further interior work at the time the formal contract was executed. Such additional interior work was dependent on the needs of the tenants ultimately leasing the space. All of the work for which plans existed was completed by Contractor. No additional plans existed, and no further work was ever offered for Contractor to complete.
Contractor's compensation under its contract with Owner was to be arrived at by utilization of a three-part formula. First, Contractor was to be paid all costs incurred in performance of the contract. Second, a contractor's fee of fifteen per cent of all costs was to be paid. Third, and finally, *1131 Contractor was to be paid an additional fee equal to fifty per cent of the difference between the maximum budgeted or projected contract total costs as adjusted by change orders and the actual costs incurred if less than the maximum projected costs.
This third and final part of the contract compensation formula was referred to at trial as a savings or under-budget bonus. Contractor prepared for Owner a maximum budget costs allocation for all phases of the work that was to be performed. Contractor completed all work he was given to perform at a cost substantially less than the allocated budget amount. When no further work was offered Contractor, it submitted a final billing for the work performed. This billing included the first two parts of the compensation formula, the costs incurred and the fifteen per cent Contractor's fee, which totalled $10,791.49, the amount ultimately found to be due by the jury verdict.
In addition, Contractor's final billing for the work performed also included the amount represented by the third part of the formula, the savings or under-budget bonus. That savings fee was billed at $34,131.17 and was arrived at basically by using calculations involving credits for the cost of completing the remaining interior work at the same rate of savings as had been achieved on the work already performed.
In addition to the actual construction work, the contract between the parties provided that in return for the compensation formulated in the contract, Contractor would assist Owner in preparing financial documentation and proposed budgets. When, upon completion of Phase I, no firm tenants existed and Owner refused to make further payments, Contractor filed its claim of lien in the amount of $44,922.99 for what it claimed as its full unpaid contract price, using all three of the formula factors.
The pertinent part of the trial judge's findings are as follows:
1. Pursuant to the verdict on the Complaint rendered in this action, it is adjudged that Plaintiff, VINCI DEVELOPMENT COMPANY recover from Defendant PETER W. CONNELL the sum of Ten Thousand Seven Hundred Ninety One and 43/100 ($10,791.32) [sic] Dollars.
2. Pursuant to the verdict rendered in this action on the Counterclaim, the Court finds that the jury rendered a verdict in favor of Counterplaintiff PETER W. CONNELL but awarded no damages and therefore, it is adjudged that PETER W. CONNELL recover from Defendant VINCI DEVELOPMENT COMPANY the sum of $0.
3. On the Mechanic's Lien Foreclosure action, tried by the Court, and brought by the Plaintiff, the Plaintiff VINCI DEVELOPMENT COMPANY take nothing by this action and the Defendant PETER W. CONNELL go hence without day [sic].
4. On the Claim of the Defendant/Counterplaintiff PETER W. CONNELL against VINCI DEVELOPMENT COMPANY asserting that a fraudulent lien existed under Section 713.31, Florida Statutes, another claim which was tried before the Court, it is adjudged that the lien was exaggerated and therefore the lien is invalid as a matter of law and that the Counterplaintiff PETER W. CONNELL recover from Defendant VINCI DEVELOPMENT COMPANY the sum of Thirty Four Thousand Two Hundred One and 23/100 ($34,201.23) Dollars, as the amount as to which the lien was exaggerated as statutory damages, and the sum of Two Thousand and no/100 ($2,000.00) Dollars which represents interest paid on monies required to be placed in escrow as a result of the filing of the exaggerated lien for a total of Thirty Six Thousand Two Hundred One and 23/100 ($36,201.23) Dollars with costs and attorneys' fees.
5. Because the Court finds that the actions tried before the jury and the Court were interrelated and arose from the same construction project that a set off is appropriate and therefore the amount of the judgment rendered by the Court as a result of the jury verdict on the Complaint is hereby set off against the judgment rendered on the exaggerated *1132 lien claim and hence the Defendant/Counterplaintiff PETER W. CONNELL shall recover from VINCI DEVELOPMENT COMPANY the sum of Twenty Five Thousand Four Hundred Nine and 89/100 ($25,409.89) Dollars together with costs and attorneys' fees.
Section 713.31(2)(a) defines a fraudulent lien as covered therein in three ways. Two of those defined ways could be pertinent here. The first pertinent way a lien may be fraudulent under the statute is if the lienor has willfully exaggerated the amount for which the lien is claimed. The second pertinent way is if a lienor has willfully included a claim for work not performed for or upon the property upon which the lien is sought to be impressed. While the trial court by its findings following trial was focusing on the second definition, we conclude that neither of the statutorily defined ways a lien may be considered fraudulent are applicable to Contractor's claim of lien.
The first error made by the trial judge in his conclusions was that the purpose of the mechanic's lien statute "is not to supply a means of protecting all contractors in all contract disputes with owners of property... ." A contractor does not just perform work or furnish materials for property being improved. A large part of a contractor's duties under a direct contract with an owner is to perform services, and a contractor is entitled to be compensated fully according to the contract method of compensation regardless of whether the compensation is for work performed, material furnished or services rendered. The fact that the Contractor and Owner had a dispute that caused the Owner to refuse further work to Contractor does not render the savings bonus provision invalid if it was proper to use that factor in the circumstances of the termination of the parties' contractual relation. That was what the trial judge correctly termed a "good-faith dispute." He was incorrect when he concluded that it was not subject to a contractor's lien because it was "based upon a contract dispute of valid feelings on behalf of the plaintiff that he was entitled to it; a good-faith feeling he was entitled to, but based upon a contract provision and not based upon work performed." (Emphasis supplied.)
A contractor is entitled to a lien based upon the compensation he is due according to the express terms of the contract between the contractor and owner. Sewer Viewer, Inc. v. Shawnee Sunset Developers, Inc., 454 So.2d 701 (Fla. 2d DCA 1984); Ballard v. Krause, 248 So.2d 233 (Fla. 4th DCA 1971). A subsequent dispute between the parties as to the amount of compensation due according to the contract plan of compensation or even a dispute as to the method of compensation provided in the contract does not convert such a good faith dispute into a fraudulent lien as provided in section 713.31. Viking Communities Corp. v. Peeler Construction Company, 367 So.2d 737 (Fla. 4th DCA 1979).
Since the trial judge obviously relied upon his conclusion that the Contractor's good-faith claim for compensation was improper because it was for work not performed, it is equally obvious by his findings of "good-faith" that he did not find that the Contractor willfully exaggerated the amount of his claim. Therefore, neither of the pertinent two statutorily defined ways of creating a fraudulent lien are present here.
As we close this part of our explanation, it is important to emphasize our conclusion that the legislature intended to provide for a lien to be fraudulent when it "willfully included a claim for work not performed upon or materials not furnished for the property" principally in those circumstances where a contractor claimed he had performed work or furnished material for property when he knew or should have known that the work or material was in fact not furnished or even furnished elsewhere. The legislature clearly did not intend to make fraudulent a circumstance where, as here, a contractor never claims to have performed more work than he has in fact performed but rather has a good faith dispute with the owner as to the method of compensation for that work.
We could end our discussion at this point since we have concluded that Contractor's claim of lien did not constitute a fraudulent lien under the provisions of section 713.31, *1133 and therefore, the trial judge should not have refused to enforce the lien. However, because of the apparent confusion that exists regarding the circumstances under which punitive damages are appropriate pursuant to section 713.31, we will extend our discussion to that subject.
The trial judge states in his findings, "I therefore must likewise, as required by statute, which I personally think is wrong, assess against the Plaintiff the amount of the exaggerated lien... ." In the amended final judgment, he enters judgment for that "amount as to which the lien was exaggerated as statutory damages... ." (Emphasis supplied.) He, thus, mistakenly equates the "punitive damages" provided for in section 713.31 with "statutory damages" which he obviously reluctantly concluded was mandated by the statute. We conclude that the statute is directory rather than mandatory as it applies to punitive damages.
In the first place, even if there could be envisioned a circumstance where a claim of lien could meet the statutory definition of fraudulent while being found to involve a good-faith dispute as to either the amount of the claim or the work performed, we cannot perceive that the legislature intended to provide for punitive damages under the statute in such a situation. We find the legislature signalled the directory rather than mandatory nature of the punitive damages when it provided that such damages should be "in an amount not exceeding the difference between the amount claimed by the lienor to be due ... and the amount actually due... ." (Emphasis supplied.) While a cap on the maximum amount of such damages is provided, there is no similarly limiting floor on the minimum amount.
The fact that the legislature created a cause of action for punitive damages where one previously did not exist, does not in the absence of clear statutory directive and standard of doing so, change the long established precedent circumscribing the nature of the conduct or wrong that will support an award of such damages. The nature of the wrongful act that will support such an award must be characterized by some circumstance of aggravation and involve conduct that has often been described as "outrageous." Even a wrongful act committed by mistake in the good-faith assertion of a supposed right, but lacking malicious motive or wrong intention, will not support an award of punitive damages. Lee County Bank v. Winson, 444 So.2d 459 (Fla. 2d DCA 1983), petition for review denied, 451 So.2d 851 (Fla. 1984); 17 Fla.Jur.2d 141 Damages § 122 (1980).
We, therefore, affirm the jury verdict and resulting judgment which awarded Contractor $10,791.43 as its remaining compensation due on its contract with Owner. We reverse the final judgment insofar as it finds Contractor's claim of lien fraudulent under section 713.31 and remand for enforcement of the lien. We reverse the award to Owner of punitive or "statutory damages" as provided in the final judgment. We reverse the award to Owner of costs and attorney's fees and remand for an award of such costs and attorney's fees to Contractor, such award to include costs and fees for this appeal. We affirm the award of zero damages to Owner.
Reversed in part, affirmed in part, and remanded with instructions.
DANAHY, C.J., SANDERLIN, J., and BOARDMAN, EDWARD F., (Ret.) J., concur.