# Third District Court of Appeal

## State of Florida

Opinion filed May 10, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2237
Lower Tribunal No. 06-8787
_____

**R. Donahue Peebles,**
Appellant,

vs.

**Dora Puig, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Sarah I. Zabel, Judge.

Berger Singerman LLP, and Michael J. Higer and Colleen A. Maranges, for appellant.

Schlesinger & Associates, P.A., and Michael J. Schlesinger, Joshua B. Bochner and Gal Rosenzweig; Billbrough & Marks, P.A., and Geoffrey B. Marks, for appellees.

Before EMAS, LOGUE and SCALES, JJ.

SCALES, J.

Appellant, defendant below, R. Donahue Peebles, appeals a final judgment awarding Appellee, plaintiff below, Dora Puig, the amount of $423,100 in damages after a jury found Peebles liable for fraudulent misrepresentation. We reverse the judgment because Peebles's conduct giving rise to Puig's fraud claim was not independent, separate and distinct from the conduct forming the basis of Puig's breach of contract claim.

**I. Facts**

The facts are not in dispute. In 2000, Puig, a licensed Florida real estate sales person, entered into an employment agreement with a real estate developer, Collins Avenue Associates, LLC ("Collins Avenue"). Collins Avenue was the developer of a high-end condominium complex located in Miami Beach, The Residences at the Bath Club ("Bath Club"). Pursuant to that contract, Puig was to serve as the Bath Club's sales and marketing director. Puig was required to develop and implement the marketing plan for the sales of Bath Club units and, in exchange, she received a salary of $12,500 per month, plus a one percent "override" commission on each unit sold by Collins Avenue.

After entering into this agreement, Collins Avenue restructured itself. As part of the restructuring, PADC Marketing, LLC, a licensed real estate brokerage firm, was formed to act as the exclusive broker to market the sale of Bath Club units. Collins Avenue and PADC entered into a marketing/brokerage agreement

2

that required Collins Avenue to pay commissions to PADC; and, in turn, PADC was required to pay the Bath Club's sales staff, including Puig. After extensive negotiations involving Collins Avenue, PADC and Puig, Puig consented to the assignment of her employment agreement from Collins Avenue to PADC. Puig was expressly designated as an intended third-party beneficiary to those provisions of the agreement between Collins Avenue and PADC related to Collins Avenue's commission obligations.

During construction of the Bath Club, several purchasers sought to re-sell their units to other buyers. Peebles, as principal of Collins Avenue and the sole owner of PADC, assured Puig that Puig and other Bath Club sales agents would be paid commissions on these resale units pursuant to their employment contracts. Puig and her sales team re-sold twenty-three condominium units. After PADC initially paid Puig commissions on seven of the twenty-three resale units, Peebles, on behalf of PADC, advised Puig that these payments were made in error. According to Peebles, while PADC was entitled to – and collected – commissions on resale units, Puig's employment agreement provided for payment of commissions only on units Collins Avenue initially sold to buyers, and not on units re-sold by buyers.   PADC did not pay Puig a commission for the remaining sixteen resale units. By deducting commissions due to Puig on Bath Club units sold by Collins Avenue, PADC recouped the commissions it claimed were

3

erroneously paid to Puig. It is undisputed that Puig's employer/broker was PADC at the time of the resales.

Initially, Puig sued PADC and Collins Avenue, alleging breach of contract, unjust enrichment and quantum meruit. Subsequently, Puig amended her complaint to add Peebles as a defendant and, significantly, to add a count of fraudulent misrepresentation as to Peebles individually.[1] Essentially, Puig's fraud claim against Peebles alleged that Peebles knowingly made false statements to Puig that PADC would pay Puig a commission based on the resale of Bath Club units. Puig alleged that Peebles had no intention of paying such commissions, and that Puig relied on Peebles's statements to expend efforts to accomplish the twenty-three resales. Prior to trial,[2] both Collins Avenue and Peebles stipulated that Puig's employment agreement obligated PADC to pay Puig a commission on resale units, and that the commissions due to Puig totaled $423,100. The trial court granted Puig summary judgment against Collins Avenue based on Puig being a third-party beneficiary to the brokerage agreement between Collins Avenue and PADC. In

---

[1] Puig's amended complaint incorporated counts of breach of contract, breach of third-party beneficiary contract, breach of implied contract, quantum meruit, unjust enrichment, and fraudulent misrepresentation.

[2] After PADC filed for bankruptcy in April of 2009, the trial court stayed all proceedings against all of the defendants. This Court quashed the stay order in Puig v. PADC Marketing, LLC, 26 So. 3d 45 (Fla. 3d DCA 2009) ("Puig I"), concluding that the automatic stay applicable to the bankruptcy debtor (i.e., PADC) was inapplicable to the other defendants because "Peebles, PADC, and Collins Avenue are separate and distinct entities." Id. at 46.

May of 2015, the case proceeded to trial against Peebles on the fraud claim.[3] The trial court denied Peebles's motion for directed verdict, and the jury returned a verdict against Peebles in the amount of $423,100, the exact same amount that Puig had obtained in her summary judgment on her third-party beneficiary claim against Collins Avenue. The trial court denied Peebles' post-trial motions and entered judgment for Puig against Peebles in the amount of $423,100, plus interest. This appeal timely ensued.

**II. Standard of Review**

Peebles seeks review of the trial court's denial of his motion (i) to dismiss Puig's fraud claim, (ii) for summary judgment, and (iii) for directed verdict. Because our review involves questions of law, we employ the de novo standard of review. Health Options, Inc. v. Palmetto Pathology Servs., P.A., 983 So. 2d 608, 613 (Fla. 3d DCA 2008); Sierra v. Shevin, 767 So. 2d 524, 525 (Fla. 3d DCA 2000).

**III. Analysis**

It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not

---

[3] After obtaining her summary judgment against Collins Avenue, but prior to proceeding to trial against Peebles, Puig dismissed her implied contract and quantum meruit claims, while the trial court dismissed Puig's unjust enrichment claim. The trial court also entered judgment in favor of Collins Avenue on the breach of contract claim. Thus, the sole, remaining count for trial was Puig's fraud claim against Peebles.

actionable in fraud. La Pesca Grande Charters, Inc. v. Moran, 704 So. 2d 710, 712-13 (Fla. 5th DCA 1998) (explaining the difference between fraud in the inducement and fraud in the performance, the latter not constituting a separate cause of action from that of a concurrent breach of contract action). It is similarly well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach. Rolls v. Bliss & Nyitray, Inc., 408 So. 2d 229, 237 (Fla. 3d DCA 1981). Both of these legal principles are rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law.[4]

In this case, Puig alleged, and the jury obviously found, that Peebles made fraudulent misrepresentations that, to a certain extent, led Puig to continue to perform her contractual employment duties by re-selling Bath Club units. Peebles's company, PADC, declined to pay Puig commissions for those resales; instead, Peebles retained these funds. There is no dispute that Puig's employment contract predated the alleged misrepresentations by Peebles (and, therefore, fraud in the inducement to contract is not at issue in this case). There is also no dispute that the damages sought by Puig and awarded to Puig by the jury are the identical

---

[4] We do not evaluate this case under the economic loss rule. See Tiara Condo. Ass'n v. Marsh & McLennan Cos., 110 So. 3d 399 (Fla. 2013).

6

damages Puig sustained as a result of PADC's failure to pay her commissions for resales.

While we have scoured the record in this case to find evidence supporting the jury's verdict, we can find no evidence of a tort or tort damages, independent and distinct from PADC's breach of contract.[5] Puig's breach of contract claim is premised entirely on Puig's contractual entitlement to commissions on resold Bath Club units. Peebles's alleged misrepresentations, luring Puig into performing under her contract certainly explain – and plainly prove – PADC's breach of contract with Puig. In our view, however, Peebles's inducement to Puig to perform her existing contract is not separate and distinct from the contract breach itself as to give rise to an independent fraud claim against Peebles. When, as here, a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach. Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("It is well established that breach of contractual terms may not form the basis for a claim in tort. Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.") As reprehensible as the jury may have found Peebles's actions to be, those actions neither converted Puig's

---

[5] We note that the trial court instructed the jury that "there can be no fraud where the alleged misrepresentations relate to matters already covered in the written employment agreement."

7

claim for contract damages into a claim for tort damages, nor imposed on Peebles personal liability for PADC's contractual obligations.

There is nothing in the record indicating that Puig suffered any distinct damages separate and apart from the damages she suffered as a result of PADC's failure to honor its contract with Puig. Therefore, any dispute regarding the applicability of the contract's commission provision to resales existed irrespective of anything Peebles might have said to Puig. The parties' contractual obligations – and whether Puig was entitled to commissions for resale units – were based on the language of the employment contract between Puig and PADC, to which Peebles was not a party.

At the end of the day, Puig was damaged not because of Peebles's misrepresentations, but because PADC failed to honor its contractual obligations. Under such circumstances, Florida does not allow a party damaged by a breach of contract to recover the exact same contract damages via a fraud claim. Ghodrati v. Miami Paneling Corp., 770 So. 2d 181, 183 (Fla. 3d DCA 2000) ("A plaintiff . . . may not recover damages for fraud that duplicate damages awarded for breach of contract.").

### III. Conclusion

8

Puig's damages resulted from, and were occasioned by, PADC's breach of contract, and not by any independent, separate or distinct conduct of Peebles. Therefore, the trial court should have entered a directed verdict for Peebles on Puig's fraud claim.[6]

Reversed and remanded for proceedings consistent with this opinion.

---

[6] We need not, and do not, reach the issue of whether Puig's fraud claim is precluded by the application of section 475.42(1)(d) of the Florida Statutes.