# Third District Court of Appeal

## State of Florida

Opinion filed February 21, 2018.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D17-434
Lower Tribunal No. 12-31154

————————————

## Coconut Grove Acquisition, LLC, etc.,
Appellant,

vs.

## S&C Venture, etc., et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Samantha Ruiz-Cohen, Judge.

Akerman LLP, and Kristen M. Fiore (Tallahassee), Michael O. Mena, and Alexandra M. Mora, for appellant.

Legon Fodiman, P.A., and Todd R. Legon and William F. Rhodes, for appellees.

Before ROTHENBERG, C.J., and EMAS and LUCK, JJ.

ROTHENBERG, C.J.

Coconut Grove Acquisition, LLC ("CGA") appeals from a final judgment entered in favor of S&C Venture, etc., ("S&C"), among others, who were the defendants below in this breach of promissory note and foreclosure action. Because we find that the law and the record fully support the trial court's rulings, we affirm.

**BACKGROUND**

S&C owns commercial property in Miami-Dade County. In September 2007, S&C executed a balloon payment promissory note ("the Note") for more than $7.9 million, secured by a mortgage on its commercial property, to Mercantil CommerceBank, N.A., f/k/a CommerceBank, N.A. ("Mercantil"). The loan provided for a maturity date of August 20, 2012, and included an option of extending the maturity date by five years, until August 20, 2017, if certain requirements were met. S&C maintained an operating account at Mercantil, from which Mercantil withdrew S&C's monthly mortgage payments.

In 2010, after S&C defaulted on the Note, Mercantil and S&C entered into a forbearance agreement, which reaffirmed the original obligations in the loan documents except as specifically modified in the forbearance agreement. Mercantil agreed to forbear on any legal action until the maturity date of the loan so long as, among other things, S&C did not default again. It is undisputed that S&C never missed a payment to Mercantil under the forbearance agreement.

2

The confusion that spawned this litigation commenced in November 2011, when Mercantil sold the loan to Stabilis Fund II, LLC ("Stabilis"). Although it no longer held the Note and was no longer in privity with S&C, Mercantil sent S&C a letter ("goodbye letter") on November 14, 2011, via overnight mail, informing S&C that Mercantil had sold the mortgage to Stabilis and directing S&C to submit its payments to Stabilis at the address provided in the letter. This letter also informed S&C that the monthly payments would no longer be deducted from the Mercantil operating account and provided a phone number to call if S&C had any questions. Despite these instructions, S&C continued to deposit sufficient funds to cover its monthly payment obligations into the operating account at Mercantil rather than sending the payments directly to Stabilis.

It was not until December 2011 that S&C received a letter ("hello letter") from Stabilis's loan servicer, which provided specific payment instructions. The hello letter informed S&C that it would receive a billing statement two weeks prior to a payment due date. However, rather than receiving the promised billing statement, S&C received a default notice from Stabilis on January 11, 2012, informing S&C that the entire loan balance was immediately due and owing because of existing defaults. In the ensuing months, while the parties attempted to resolve their disputes, S&C sent Stabilis all monthly payment due under the terms

3

of the loan documents, and Stabilis accepted each payment, with the qualification that it was not waiving any preexisting default.

On July 19, 2012, S&C attempted to exercise its right to extend the maturity date of the loan from August 20, 2012 to August 20, 2017, pursuant to the terms of the loan documents and the forbearance agreement. To that end, S&C tendered the required extension fee to Stabilis. Stabilis rejected the tender and informed S&C on August 24, 2012, that the maturity date would not be extended because S&C's loan was in default.

Thereafter, Stabilis filed a two-count complaint against S&C for breaching the Note and for foreclosure on the collateral property. Stabilis argued, among other things, that S&C failed to make its monthly payments in November and December 2011. S&C responded that Stabilis and its agents were responsible for any delay in payments because they caused the confusion that resulted in the delay. S&C also counterclaimed, seeking a declaratory judgment finding that it had properly extended the maturity date of the loan. In December 2014, Stabilis assigned the loan to CGA.

After a non-jury trial in November 2016, the trial court entered a detailed forty-six-page final judgment in favor of S&C, concluding that: (1) CGA failed to prove that S&C breached the note; (2) CGA failed to prove that it is entitled to foreclosure, and it would be inequitable, unjust, and unconscionable to foreclose;

4

and (3) S&C is entitled to declaratory judgments finding that S&C is not in default, the January 2012 notice of default is invalid, S&C's rights under the loan documents remain valid and enforceable, and S&C properly exercised its option to extend the loan's maturity date to August 20, 2017. Thereafter, the trial court denied CGA's motion for rehearing, and this appeal followed.

## ANALYSIS

We review the trial court's construction and interpretation of notes and mortgages de novo; however, we review the trial court's findings of facts to determine if they are supported by competent substantial evidence. Smith v. Reverse Mortg. Sols., Inc., 200 So. 3d 221, 224 (Fla. 3d DCA 2016).

CGA contends on appeal that S&C defaulted because it failed to make its required monthly payments in November and December 2011 despite receiving the goodbye letter from Mercantil before either payment was due, a letter which specifically instructed S&C to pay Stabilis at an address contained therein. We, however, find that based on the place of payment clause contained in the Note, S&C was not required to follow the instructions contained in Mercantil's goodbye letter, and because S&C continued to deposit sufficient funds to cover its payment obligations into its account with Mercantil, S&C was not in default of either the Note or the forbearance agreement.

5

The following findings by the trial court are supported by competent substantial evidence: (1) in November and December 2011, S&C continued to make payments into the operating account held at Mercantil; (2) sufficient funds existed in the operating account to cover all loan payment obligations that came due during that time; and (3) S&C did not receive the hello letter from Stabilis's loan servicer, which was the first letter from Stabilis to include payment instructions, until after the November and December 2011 payments were due.

The place of payment clause in the Note, which the forbearance agreement does not modify, provides: "This Note is payable **at the place designated hereinabove** or at such other place as the **payee or holder hereof may hereafter designate in writing**." (emphasis added). The plain meaning of this provision is controlling. Bradley v. Sanchez, 943 So. 2d 218, 221 (Fla. 3d DCA 2006) ("Where there is no facial ambiguity in the portion of the subject contract, the provision must be afforded its plain meaning.") (internal quotation and citation omitted). The Note designated that S&C deposit sufficient funds into the operating account S&C opened at Mercantil for that purpose. It is undisputed that since the execution of the forbearance agreement, S&C complied with its contractual obligations by depositing sufficient funds into the operating account at Mercantil, which was the place "designated hereinabove," until another place was designated by "the payee or holder" of the Note.

Although Mercantil attempted to change the place of payment when it sent its goodbye letter to S&C after it sold the loan to Stabilis, Mercantil was no longer the payee or holder of the Note, and it therefore had no authority to change the place of payment. It is neither the fault of S&C nor Mercantil that S&C did not receive new payment instructions from Stabilis, the then-current payee and/or holder of the Note, until after the November and December 2011 payments became due. In fact, if S&C had sent its monthly payments to the address contained in the "goodbye letter," these payments would have been in conflict with the binding place of payment term in the Note. Accordingly, S&C's decision to continue depositing sufficient funds into the operating account to cover its monthly payment obligations was in compliance with its contractual duties.[1]

Lastly, we conclude that the trial court did not err by declaring that S&C properly extended the maturity date of the loan to August 20, 2017. On appeal, CGA contends that one of the conditions precedent for extending the maturity date of the loan was not met. Specifically, CGA contends that the forbearance agreement's required debt service coverage ratio ("DSCR"), which is a measure of

---

[1] The trial court's order included several findings related to the discretion the trial court has to deny foreclosure on equitable grounds. See Amerifirst Fed. Sav. & Loan Ass'n of Miami v. Century 21 Commodore Plaza, Inc., 416 So. 2d 45, 46 (Fla. 3d DCA 1982) ("It is axiomatic that a court of equity may refuse to foreclose a mortgage when an acceleration of the due date makes acceleration unconscionable and foreclosure inequitable and unjust."). However, we decline to address such issues because we find that there is no breach from which foreclosure could follow.

the ability of net income to service a debt, was not met as of the initial maturity date, August 20, 2012. The parties contested the measure of the DSCR vigorously below, and the trial court found that the required DSCR of 1.3:1 was satisfied after hearing detailed testimony from the parties' expert witnesses and evaluating the witnesses' credibility. The trial court's finding is supported by competent substantial evidence, and thus, we will not second guess the trial court on appeal. Bare Necessities, Inc. v. Estrada, 902 So. 2d 184, 185 (Fla. 3d DCA 2005) (noting that "when competent, substantial evidence supports a trial court's ruling, the appellate court will not 'second-guess the trial court'") (citing Bryan v. Butterworth, 692 So. 2d 878, 881 (Fla. 1997)).

## **CONCLUSION**

Because there is competent substantial evidence in the record that supports the trial court's finding that S&C did not fail to make its monthly payments in November and December 2011, we find no error in the trial court's comprehensive order concluding that S&C did not breach the terms of the forbearance agreement or other loan documents, CGA failed to prove that it is entitled to foreclose on S&C's commercial property, and S&C properly extended the maturity date of the loan. We also find the remainder of CGA's arguments to be without merit, and thus, we decline to address them further. Accordingly, we affirm in all respects.

Affirmed.